IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-00232-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    EFRAIN VELEZ,

    Defendant.

---

## PLEA AGREEMENT

The United States of America, by and through Jeffrey K. Graves, Assistant United States Attorney for the District of Colorado, and the defendant, Efrain Velez, personally and by counsel, Scott T. Poland, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to: (1) plead guilty to Count 1 of the Indictment, charging Conspiracy to Distribute Fentanyl Resulting in Death in violation of Title 21, United States Code, Sections 846, and 841(a)(1) and (b)(1)(B)(vi); (2) waive certain appellate and collateral attack rights, as explained in detail below; (3) be liable for restitution to the victims in this matter in an amount to be determined at sentencing which could include joint and several liability for some or all of the amount with other as yet

EXHIBIT 1

uncharged defendants; and (4) comply with any other obligations as disclosed to the Court.

### B. Government's Obligations:

In exchange for the above, the United States agrees to (1) move to dismiss Count 3 of the Indictment [ECF #1] in this case as to the Defendant at sentencing; (2) not to bring other charges against the defendant based on information currently known to the United States Attorney's Office for the District of Colorado concerning the defendant's distribution of fentanyl and other controlled substances in the District of Colorado; and (3) recommend the Court give the defendant full credit for acceptance of responsibility per Guideline § 3E1.1, unless the defendant engages in any additional criminal conduct, or conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, cmt. n.4, between the time of the guilty plea and sentencing.

Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, pursue any counts dismissed or not brought pursuant to this agreement and potentially file a superseding indictment.

### C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the defendant receives a life sentence; or,

(2) the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence is for life imprisonment. But if the second criterion apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a)

grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### D. Restitution:

The defendant acknowledges that in addition to any other penalty authorized by law, the Court may order the defendant to make restitution to any victim in this matter and/or to any victim's estate. 18 U.S.C. § 3663(a)(1)(A). Additionally, the defendant acknowledges that the Court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement. 18 U.S.C. § 3663(a)(3).

Understanding this, the defendant agrees that he shall be ordered to pay restitution in an amount to be determined at sentencing to A.L.'s estate and her family members (hereinafter the "victims"). The parties agree that the defendant should be held jointly and severally liable for the full amount of restitution, along with any other defendant found liable in relation to the circumstances charged in this matter. The defendant agrees that full restitution to the victims shall include (1) the cost of any necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment; (2) any lost income or necessary child care, transportation, or other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense; and (3) the cost of any necessary funeral or related services.

The defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that any victim has

received, or is entitled to receive, compensation from the proceeds of insurance or any other source. The defendant agrees that full restitution will be ordered regardless of the defendant's financial resources. The defendant also understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw his guilty plea.

The defendant agrees to comply with any restitution order entered at the time of sentencing and to cooperate in efforts to collect the restitution obligations, by any means the United States deems appropriate. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action. The defendant agrees that any restitution imposed will be non-dischargeable in any bankruptcy proceeding and the defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## II.  ELEMENTS OF THE OFFENSE

The parties agree that the elements of Conspiracy to Distribute Fentanyl Resulting in Death, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(vi), to which this plea is being tendered are as follows; that in the State and District of Colorado, on or about the date charged:

### Count One of the Indictment [ECF No. 1]: *Conspiracy to Distribute Fentanyl Resulting in Death, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(vi)*

*First:* Two or more persons agreed to violate the federal drug laws;

*Second:* The defendant knew the essential objective of the conspiracy;

*Third:* The defendant knowingly and voluntarily involved himself in the conspiracy

*Fourth:* There was interdependence among the members of the conspiracy;

*Fifth*: The overall scope of the conspiracy involved at least 40 grams of a mixture or substance containing a detectable amount of fentanyl; and,

*Sixth*: Death resulted from use of a controlled substance attributable to the defendant's own acts or his coconspirator's reasonably foreseeable acts in furtherance of the conspiracy.[1]

## III.      STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 1 of the Indictment is as follows: not less than twenty years of imprisonment and not more than life imprisonment; not less than four years of supervised release and not more than life supervised release; maximum fine of $5,000,000; $100 mandatory victim's fund assessment fee; and restitution of an amount to be determined at the time of sentencing.

## IV.      COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.      STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set

---

[1] 10th Cir., Criminal Pattern Jury Instructions, No. 2.87 (2021); *see also United States v. Ellis*, 868 F.3d 1155, 1170 (10th Cir. 2017).

forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

The defendant distributed, in conjunction with others, large quantities of pills that had markings of an "M" in a box on one side and a "30" on the other. The markings on these pills would indicate that that they are 30mg Oxycodone pills manufactured by Mallinckrodt, Inc. However, they were counterfeit and contained fentanyl. Such pills are referred to as "fentanyl pills" below.

Prior to May 2022, Efrain Velez ("Defendant Velez") met a person in Phoenix, Arizona, known to him as "Mr. Robinson." On several occasions prior to May 2022, Defendant Velez traveled from Mesa County, Colorado, to Phoenix, Arizona to personally meet with Mr. Robinson to purchase fentanyl pills. On these occasions, Defendant Velez would meet Mr. Robinson at hotels or parks in Phoenix, where he would give money to Mr. Robinson in exchange for hundreds or thousands of fentanyl pills. Defendant Velez would then return to Colorado and distribute the fentanyl pills at a profit. During theses transactions, Mr. Robinson drove an older, white van with chipped paint. Defendant Velez also learned from Mr. Robinson that Mr. Robinson used the cashtag (*i.e.,* a unique identifier on the CashApp money transfer service) of "$jackjames1996."

At all times relevant to this plea agreement, Defendant Velez was in a

relationship with Codefendant Vasquez. In the spring of 2022, the defendant met Codefendant Munday. Defendant Velez and Codefendant Munday agreed that they should work together to acquire narcotics from Arizona and transport the narcotics to Grand Junction.

On May 6, 2022, Defendant Velez left Grand Junction, Colorado with Codefendants Munday and Vasquez (collectively "the Defendants") in a black Nissan Rouge and traveled to Phoenix, Arizona. The purpose of the trip was to meet Mr. Robinson to buy bulk narcotics and return to Colorado to sell the narcotics at a profit.

The Defendants arrived in Phoenix on May 7, 2022. Once there, Defendant Velez arranged by text message for the Defendants to meet Mr. Robinson at a park. At the park, Defendant Velez gave Mr. Robinson money for fentanyl pills. Defendant Velez also introduced Codefendant Munday to Mr. Robinson. Defendant Velez sent a text message to Codefendant Munday with Mr. Robinson's cashtag of "$jackjames1996."

After receiving the money from the Defendants, Mr. Robinson left the park to acquire the narcotics. Defendant Velez sent a text message to Mr. Robinson informing him that the Defendants would be at a Ross store in Glendale, Arizona. Mr. Robinson met the Defendants in the parking lot of the Ross store and provided hundreds of fentanyl pills to the Defendants from the back of his white van.

The Defendants then drove from Arizona back towards Grand Junction, Colorado. The Defendants intended to distribute the narcotics purchased from Mr. Robinson upon their return. However, early on May 8, 2022, shortly after reentering Colorado, the Defendants were pulled over by law enforcement.

As they were stopping, Codefendant Vasquez secreted hundreds of fentanyl pills

inside of her person. Defendant Velez unsuccessfully attempted to do the same. During the traffic stop, some narcotics were discovered by law enforcement and the Defendants were arrested and taken to the Mesa County Detention Facility. Law enforcement discovered a bag of fentanyl pills in the patrol car that had transported Defendant Velez. After an interview with law enforcement, several pills fell from the pant leg of Defendant Velez. Later that day, Defendant Velez required emergent medical attention for an overdose of fentanyl because of an unknown number of pills that remained in Defendant Velez's body.

Upon his arrest on May 8, 2022, it was reasonably foreseeable to Defendant Velez that his coconspirators would also attempt to bring portions of the fentanyl pills purchased in Arizona with them into the jail. It was also reasonably foreseeable to Defendant Velez that, if successful, his coconspirators would continue to distribute the fentanyl pills while in custody.

Defendant Velez acknowledges that the Government's evidence at trial would show the following: Codefendant Vasquez was successful in smuggling several hundred fentanyl pills into the Mesa County Detention Facility. Once in the holding area, Codefendant Vasquez provided a portion of the pills to Codefendant Munday. Codefendants Vasquez and Munday worked together, and with Codefendant Locke, to distribute the fentanyl pills in the jail in exchange for commissary items, clothing, and money.

On May 20, 2022, Codefendant Locke passed a crushed fentanyl pill in a yellow note to other inmates with the initials of A.L. and A.B. The crushed pill and note were slid through a door that separated two pods. After receiving the crushed pill, A.L. and

A.B. returned to their shared cell. That evening, A.L. and A.B. used a portion of the crushed pill together. A.L. then worked her shift in the jail laundry.

Sometime after returning from her shift in the laundry, A.L. consumed the remaining crushed pill and died as a result. In the early afternoon of May 21, 2022, A.B. woke up and discovered A.L. deceased. A.B. alerted jail deputies and life-saving measures were attempted but were unsuccessful. An autopsy later confirmed that A.L. died because of fentanyl intoxication. Defendant Velez acknowledges that the Government's trial evidence would show that the crushed pill consumed by A.L. on May 20 and 21, 2022, was originally provided to the Defendants by Mr. Robinson in Phoenix, Arizona, on May 7, 2022.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the

presentence report, or otherwise identified during the sentencing process, affect the estimate below.

**Count Two of the Indictment [ECF No. 1]:** *Conspiracy to Distribute Fentanyl Resulting in Death, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(vi)*

**Offense Level**

- A. The base offense is calculated under §2D1.1. Because a death occurred, under §2D1.1(a)(2), the base offense level is **38**.
- B. Because the object of the offense was the distribution of a controlled substance in a detention facility, under §2D1.1(a)(2), the base offense level is *increased by two levels*, result in an adjusted offense level of **40**.
- C. No other victim-related, role in the offense, or multiple count adjustments apply.
- D. The defendant should receive a *decrease of three levels* for timely acceptance of responsibility under § 3E1.1(a) and (b). The resulting offense level therefore would be **37**.

**Criminal History**

- E. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on the information currently available to the parties, the Government estimates that the defendant's criminal history category would be **II**.
- F. Assuming the criminal history facts known to the parties are correct, the armed career criminal statute does not apply.

**Imprisonment**

G. This offense has a mandatory minimum term of imprisonment of 240 months. The advisory guideline range of imprisonment resulting from an offense level of **37** and the above criminal history category **II** is 235-293 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated calculations above could conceivably result in a range from 240 months (the mandatory minimum) to life (the top of Category VI with an offense level of 37). The statutory maximum penalty is life imprisonment.

**Fine**

H. Pursuant to guideline § 5E1.2, assuming an offense level of **37**, the fine range for this offense would be $40,000 to $400,000 plus applicable interest and penalties.

**Supervised Release**

I. Pursuant to guideline § 5D1.2(a)(1), the term of supervised release shall not be less than two year and not more than five years.

**Restitution**

J. Under 18 U.S.C. § 3663A, the defendant acknowledges that he shall be ordered to pay restitution. The defendant acknowledges that the victims of the offense of conviction may submit restitution claims to Probation for consideration at sentencing. Any dispute as to the proper amount of restitution shall be resolved by the court by a preponderance of the evidence, with the burden of demonstrating the amount of loss sustained by the victim as a result of the offense resting with the Government.

\*   \*   \*   \*

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.     ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 10/17/23

_Efrain Velez_
EFRAIN VELEZ
Defendant

Date: 10/19/23

_[signature]_
SCOTT POLAND
Attorney for Defendant

Date: 10-23-23

_[signature]_
JEFFREY GRAVES
Assistant U.S. Attorney